UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
AMERICAN GREENFUELS ROCKWOOD           :
(TENNESSEE), LLC,                      :
                                       :
                          Plaintiff,   :
                                       :
             -v-                       :
                                       :
AIK CHUAN CONSTRUCTION PTE. LTD.,      :
                                       :
                          Defendants.  :
                                       :       21cv7680 (DLC)
     ---------------------------------:
                                       :       OPINION AND ORDER
                                       :
AIK CHUAN CONSTRUCTION PTE. LTD.,      :
                                       :
             Counterclaim Plaintiff,   :
                                       :
             -v-                       :
                                       :
KOLMAR AMERICAS, INC. and AMERICAN     :
GREENFUELS ROCKWOOD (TENNESSEE), LLC,  :
                                       :
             Counterclaim Defendants.  :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiff and counterclaim defendants:
John Nelson Thomas
Jenna Christine Hutchinson
Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, NY 10022

Leslie Davis
Troutman Sanders
401 9th Street NW
Washington, DC 20004

For defendant:
John F. Hagan, Jr.
Mark Samartino

Cameron Davis
Arnold & Porter Kaye Scholer LLP
70 West Madison Street
Suite 4200
Chicago, IL 60602

Melissa Ann Brown
Arnold & Porter Kaye Scholer LLP
250 West 55th St.
New York, NY 10019

DENISE COTE, District Judge:

Plaintiff American GreenFuels Rockwood (Tennessee), LLC ("GreenFuels") has brought this lawsuit against Aik Chuan Construction Pte. Ltd. ("Aik Chuan") for breach of a subordination agreement.  Aik Chuan has brought counterclaims against GreenFuels and its parent company, Kolmar Americas, Inc. ("Kolmar"), alleging that the counterclaim defendants have deliberately induced a default on the underlying debt in bad faith.  Kolmar has moved to dismiss the counterclaims, and GreenFuels has moved to dismiss the counterclaims and strike Aik Chuan's affirmative defenses.  For the following reasons, the motions are largely denied.

## Background

Unless otherwise noted, the following facts are taken from the Amended Answer and Counterclaims ("AAC") and exhibits attached thereto, and are assumed to be true for the purposes of this motion.  In March of 2020, Aik Chuan sold a mostly complete diesel fuel plant in Tennessee to Global Energy Hold Co., LLC

("GE Hold"), in exchange for two promissory notes together worth approximately $85 million (the "Promissory Notes"), as well as a warrant for Aik Chuan to purchase a 5% membership in GE Hold. GE Hold is part of a larger corporate family in which Global Energy, LLC ("GE Parent") owns GE Hold, GE Hold owns Global Energy Pledge Co. ("GE Pledge"), GE Pledge owns Global Energy Rockwood Borrower Co., LLC ("GE Borrower"), and GE Borrower owns Global Energy Rockwood, LLC ("GE Rockwood").

At around the same time, GE Borrower, GE Pledge, GE Hold, and GE Rockwood (the "Borrowers") entered into an agreement to borrow approximately $8 million from GreenFuels (the "GreenFuels Loan").  Kolmar created GreenFuels for the purpose of offering the GreenFuels Loan.  GreenFuels and each company in the Global Energy corporate family agreed that GreenFuels would be entitled to sell the diesel plant if there was a default on the GreenFuels Loan, and that GreenFuels would apply those proceeds against the debt.

On March 30, 2020, Aik Chuan and GreenFuels entered into an agreement (the "Subordination Agreement"), pursuant to which Aik Chuan agreed to subordinate one of the Promissory Notes (the "Subordinated Note") to the GreenFuels Loan.  The Subordination Agreement provides that, upon receiving written notice of a default under the GreenFuels Loan, Aik Chuan would take

assignment of the GreenFuels Loan, and pay GreenFuels the cash equivalent to the amount of outstanding debt on the loan.

Aik Chuan alleges that, after the GreenFuels Loan and Subordination Agreement were executed, Kolmar began to assert significant control over GE Borrower.  The GreenFuels Loan gave GreenFuels the right to appoint a majority of GE Parent's board. Kolmar used that leverage to heavily involve itself with GE Rockwood's everyday business decisions.  Kolmar reviewed applications for a plant manager, and frequently consulted with GE Rockwood on their strategic and technical problems.  Kolmar also regularly spoke to and negotiated with GE's vendors and suppliers.

Kolmar also exercised significant control over GE Rockwood's finances.  Kolmar entered into an agreement with GE Rockwood to purchase all diesel produced by the diesel plant. Kolmar would also distribute the GreenFuels Loan incrementally, providing GE Rockwood only with the money it needed to pay its invoices.  Additionally, Kolmar prevented GE Rockwood from obtaining other sources of income or financing.  Kolmar prevented GE Rockwood from selling fuel to other parties, and refused to allow GE Rockwood to accept loans or investments from other companies.

On June 3, 2021, Kolmar's General Counsel sent Aik Chuan notice that the GreenFuels Loan was in default, and that Aik

Chuan therefore owed GreenFuels approximately $19 million. GreenFuels alleges that GE Borrower defaulted on the GreenFuels Loan by failing to maintain sufficient liquidity, and by failing to satisfy certain performance criteria (the "Verification Criteria") by the "Target Verification Date" of May 31, 2020. Aik Chuan, however, alleges that Kolmar manufactured these defaults by refusing to conduct the relevant performance tests, and by depriving GE Borrower of the liquidity it would need to avoid default and get the plant up and running in time.

On June 11, 2021, GreenFuels notified Aik Chuan that it intended to conduct a foreclosure sale of the diesel plant on July 9. GreenFuels then published a foreclosure notice that identified the location and address of the property being sold, but did not describe the diesel plant or any other equipment on the property. Kolmar was the only bidder at the foreclosure sale, purchasing the property for $1.7 million. This value amounts to approximately half of the assessed value of the property's land and buildings alone, around 2% of the amount for which Aik Chuan sold the diesel plant to GE Hold, and 1.7% of the $100 million valuation that GE Rockwood and Kolmar had agreed on for investment purposes in May of 2021. GreenFuels applied the proceeds from this sale against the GreenFuels Loan, and on July 19, 2021, sent Aik Chuan a letter demanding

approximately $17.5 million to satisfy the outstanding amount of the GreenFuels Loan.

GreenFuels filed this action on September 14, 2021, bringing a claim against Aik Chuan for the $17.5 million in outstanding debt under the GreenFuels Loan.  Aik Chuan answered the complaint on January 13, 2022, asserting counterclaims against GreenFuels and Kolmar for breach of the Subordination Agreement and the implied covenant of good faith and fair dealing, tortious interference with a contract, and breach of fiduciary duty.

GreenFuels and Kolmar each filed a motion to dismiss Aik Chuan's counterclaims on March 21.  Aik Chuan was provided the opportunity to file any amended counterclaim by April 22, and was warned that that it would likely have no further opportunity to amend.  Aik Chuan filed its amended counterclaims on April 22.  On May 13, Kolmar submitted a motion to dismiss the counterclaims, and GreenFuels submitted a motion to dismiss the counterclaims and strike Aik Chuan's first through ninth affirmative defenses.  The motions became fully submitted on June 24.

## Discussion

To survive a motion to dismiss for failure to state a claim, the complaint "must plead enough facts to state a claim to relief that is plausible on its face."  <u>Green v. Dep't of</u>

Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
The same pleading standard applies to counterclaims.  GEOMC Co.
v. Calmare Therapeutics Inc., 918 F.3d 92, 99 (2d Cir. 2019).

"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  Charles v. Orange County, 925 F.3d 73, 81 (2d Cir.
2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).
"In determining if a claim is sufficiently plausible to
withstand dismissal," a court "accept[s] all factual allegations
as true" and "draw[s] all reasonable inferences in favor of the
plaintiffs."  Melendez v. City of New York, 16 F.4th 992, 1010
(2d Cir. 2021) (citation omitted).  To evaluate the adequacy of
a complaint, "a district court may consider the facts alleged in
the complaint, documents attached to the complaint as exhibits,
and documents incorporated by reference in the complaint."
United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d
Cir. 2021) (citation omitted).

I.   Alter Ego Liability

Aik Chuan seeks to hold Kolmar liable as an alter ego of
GreenFuels.  To impose alter ego liability, the plaintiff must
allege that "(1) the owners exercised complete domination of the
corporation in respect to the transaction attacked; and (2) that

such domination was used to commit a fraud or wrong against the
plaintiff which resulted in plaintiff's injury." Cortlandt
Street Recovery Corp. v. Bonderman, 31 N.Y.3d 30, 47 (2018)
(citation omitted).[1]  "Courts must be extremely reluctant to
disregard corporate form, and should do so only when the
corporation primarily transacts the business of the dominating
interest rather than its own." United States v. Funds Held in
the Name or the Benefit of Wetterer, 210 F.3d 96, 106 (2d Cir.
2000).  To determine whether one corporation dominates another,
courts consider several factors, including:

> (1) the absence of the formalities and paraphernalia
> that are part and parcel of the corporate existence,
> i.e., issuance of stock, election of directors,
> keeping of corporate records and the like; (2)
> inadequate capitalization; (3) whether funds are put
> in and taken out of the corporation for personal
> rather than corporate purposes; (4) overlap in
> ownership, officers, directors, and personnel; (5)
> common office space, address and telephone numbers of
> corporate entities; (6) the amount of business
> discretion displayed by the allegedly dominated
> corporation; (7) whether the related corporations deal
> with the dominated corporation at arms length; (8)
> whether the corporations are treated as independent
> profit centers; (9) the payment or guarantee of debts
> of the dominated corporation by other corporations in

---

[1] The parties' briefs largely assume without discussion "that New
York Law controls, and such implied consent is sufficient to
establish choice of law." Chau v. Lewis, 771 F.3d 118, 126 (2d
Cir. 2014) (citation omitted).  Additionally, to the extent the
parties also reference Tennessee law, they have identified no
material conflict between the laws of Tennessee and New York.
See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 822
F.3d 620, 641 (2d Cir. 2016) (choice-of-law analysis is only
necessary if "there is an actual conflict between the laws of
the jurisdictions involved" (citation omitted)).

the group; and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp., 766 F.3d 212, 224 (2d Cir. 2014) (citing Wm. Passalacqua Builders, Inc. v. Resnick Developers. S., Inc., 933 F.2d 131, 139 (2d Cir. 1991)).

"While complete domination of the corporation is the key to piercing the corporate veil . . . such domination, standing alone, is not enough; some showing of a wrongful or unjust action toward plaintiff is required." Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141–42 (1993).  Alter ego liability is only appropriate when the dominating corporation "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice." Cortlandt Street Recovery Corp., 31 N.Y.3d at 48.  "Without a finding that the domination occurred for the purpose of committing a wrong, the second element of veil-piercing analysis has not been met." MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 64 (2d Cir. 2001).

Kolmar does not challenge, for the purposes of this motion, Aik Chuan's allegations that Kolmar dominated GreenFuels.  The AAC alleges that Kolmar formed GreenFuels solely for the purpose of supplying the GreenFuels Loan, that it remained GreenFuels's sole member, that GreenFuels's employees were Kolmar employees, and that much of GreenFuels's business with Aik Chuan and the

Global Energy companies occurred through Kolmar email addresses or on Kolmar letterhead.  These allegations speak to at least the fourth, fifth, sixth, and tenth Passalacqua factors, and each of these factors points in the direction of corporate dominance.  See N.Y. State Elec. & Gas Corp., 766 F.3d at 224.

Whether or not Aik Chuan has adequately pleaded corporate dominance, however, Aik Chuan's request to pierce the corporate veil must be denied because it has not adequately alleged that Kolmar used the corporate form to commit a fraud or wrong against it.  Aik Chuan argues that it has sufficiently pleaded a wrong because it has alleged that Kolmar wrongfully induced GE Borrower to default and then purchased the diesel plant at a foreclosure auction for a well-below-market price, thereby obtaining the plant nearly for free and leaving Aik Chuan with GE Rockwood's debt.  But this alleged wrong does not involve an abuse of the corporate form.  Cortlandt Street Recovery Corp., 31 N.Y.3d at 48.  Aik Chuan does not, for example, allege that the corporate form was used to obscure unlawful or improper transactions or that Kolmar left GreenFuels undercapitalized in order to render it judgment-proof.  Cf. id. at 48-49; Baby Phat Holding Co., LLC v. Kellwood Co., 997 N.Y.S.2d 67, 407 (1st Dep't 2014).  Nor does Aik Chuan allege that GreenFuels was created "for the purpose of committing a wrong."  MAG Portfolio Consult, GMBH, 268 F.3d at 64.  On the contrary, Aik Chuan

alleges that GreenFuels was created for the sole (and benign) purpose of offering the GreenFuels Loan.  No part of Kolmar's alleged wrongful scheme required it and GreenFuels to be separate entities, and Aik Chuan does not explain why Kolmar or GreenFuels could not have achieved the same result without use of a separate corporation.

Aik Chuan argues that, regardless, any decision on veil-piercing should be deferred to a later stage of the proceedings, because alter ego liability presents a fact-intensive inquiry unsuitable for resolution on a motion to dismiss, or even on summary judgment.  In many cases deferring consideration of an alter ego claim, however, courts have faced highly fact-bound questions regarding the extent and manner in which the corporation was dominated.  See, e.g., MAG Portfolio Consultant GMBH, 268 F.3d at 64; First Bank of Ams. v. Motor Car Funding, Inc., 690 N.Y.S.2d 17, 22 (1st Dep't 1999).  But corporate dominance is not at issue here; only whether Kolmar has committed a fraud or wrong through abuse of the corporate form. Because Aik Chuan has not alleged sufficient facts to plausibly satisfy this second element, its claims against Kolmar must be dismissed to the extent they rely on alter ego liability.

Aik Chuan does not distinguish between claims for which it seeks to hold Kolmar liable for its own conduct, and claims for which it seeks to hold Kolmar liable as an alter ego of

GreenFuels.  Because Kolmar is not a party to the Subordination Agreement, however, Aik Chuan may not bring a claim against Kolmar for breach of the Subordination Agreement unless Kolmar is an alter ego of GreenFuels.  See TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339-40 (1998); Perez v. Long Island Concrete Inc., 165 N.Y.S.3d 504, 506-07 (1st Dep't 2022).  And because Kolmar is not an alter ego of GreenFuels for these purposes, Aik Chuan's claims against Kolmar for breach of contract must be dismissed.  Additionally, for the reasons given below, Aik Chuan's claim against Kolmar for breach of fiduciary duty must be dismissed even to the extent that Aik Chuan seeks to hold Kolmar liable directly rather than vicariously.

Aik Chuan's claim for tortious interference with a contract, however, does not depend on alter ego liability.  It alleges that Kolmar itself, acting through its own employees using Kolmar email addresses and Kolmar letterhead, procured a default on the GreenFuels Loan, allowing GreenFuels to foreclose on the diesel plant, and depriving GE Hold of the revenue it needed to make payments on the Promissory Notes.  As explained below, these allegations are sufficient to state a claim for tortious interference with a contract.  Accordingly, all claims against Kolmar are dismissed, except for Aik Chuan's tortious interference claim.

II.  Breach of the Subordination Agreement and Implied
     Covenant of Good Faith and Fair Dealing

Aik Chuan alleges that GreenFuels breached the
Subordination Agreement by incorrectly declaring a default under
the GreenFuels Loan, and by selling the diesel plant for an
unreasonably low value.  "Under New York law, implicit in every
contract is a covenant of good faith and fair dealing which
encompasses any promises that a reasonable promisee would
understand to be included." JN Contemporary Art LLC v. Phillips
Auctioneers LLC, 29 F.4th 118, 128 (2d Cir. 2022) (citation
omitted).  The implied covenant of good faith and fair dealing
includes a promise that "neither party to a contract shall do
anything that has the effect of destroying or injuring the right
of the other party to receive the fruits of the contract, or to
violate the party's presumed intentions or reasonable
expectations."  Id. (citation omitted).

Aik Chuan has stated a claim for breach of the implied
covenant of good faith and fair dealing.  The AAC alleges that
no default under the GreenFuels Loan actually occurred, and that
if it had, it is only because GreenFuels induced the default in
bad faith.  Aik Chuan alleges that GreenFuels refused to
distribute enough of the GreenFuels Loan to provide GE Rockwood
enough liquidity to avoid default, and that it did not take the

necessary steps to determine whether GE Rokcwood complied with the relevant criteria by the Target Verification Date.

Additionally, once the purported default occurred, Aik Chuan alleges that, instead of attempting in good faith to offset the remaining debt under the GreenFuels Loan through a foreclosure sale, GreenFuels improperly sold the diesel plant to Kolmar for an unreasonably low amount.  GreenFuels was able to purchase the plant for a low price by failing to publish important information about the sale, resulting in no outside bids.  As a result, GreenFuels demanded that Aik Chuan pay almost the entire outstanding balance of the GreenFuels Loan, even though the counterclaim defendants ended up with the diesel plant.  The AAC therefore plausibly alleges that GreenFuels injured Aik Chuan's ability to assert its rights under the Subordination Agreement, and that GreenFuels violated Aik Chuan's "reasonable expectations" under the Subordination Agreement.  See id.; ABN AMRO Bank, N.V. v. MBIA Inc., 17 N.Y.3d 208, 229 (2011) (implied covenant breached where a company "unfairly shifted the risks of default and delinquencies" to creditors (citation omitted)).

GreenFuels argues that Aik Chuan cannot bring a claim for breach of contract, because nothing in the Subordination Agreement provides it the right to contest GreenFuels's determination that an event of default had occurred under the

GreenFuels Loan.   But the Subordination Agreement imposes obligations on Aik Chuan to accept the GreenFuels Loan in exchange for the outstanding debt only "if an Event of Default occurs" -- not merely if GreenFuels declares an Event of Default to have occurred.   Additionally, to the extent that the parties dispute whether this express term confers a right, Aik Chuan has adequately pled in the alternative a claim for breach of the implied covenant of good faith and fair dealing.   See Spinelli v. Nat'l Football League, 903 F.3d 185, 206 (2d Cir. 2018).

A. Event of Default Under the GreenFuels Loan

GreenFuels disputes that Aik Chuan has adequately pleaded that there was no default under the GreenFuels Loan.   GreenFuels notes that it is undisputed that the Borrowers did not comply with the GreenFuels Loan's liquidity requirements.   Aik Chuan, however, has plausibly alleged that GreenFuels waived the liquidity requirement.   "Generally, a party to a written agreement may orally waive enforcement of one of its terms despite a provision to the contrary."   Taylor v. Blaylock & Partners, L.P., 659 N.Y.S.2d 257, 258 (1st Dep't 1997) (citing Rose v. Spa Realty Assocs., 42 N.Y.2d 338, 343-344 (1977)).   "Waiver may be demonstrated by words or conduct, including full or partial performance and equitable estoppel."   Id.   Where "the only proof of an alleged agreement to deviate from a written contract is the oral exchanges between the parties, the writing

15

controls." Id. at 259 (citation omitted).  Aik Chuan argues that GreenFuels waived the liquidity requirements by agreeing to disburse only as much of the loan as GE Rockwood needed to cover its expenses.  The AAC alleges that GreenFuels was aware that this practice would keep GE Rockwood below the GreenFuels Loan's liquidity requirements, and that GreenFuels accepted this result.  This description of a course of conduct is sufficient to plead waiver.

GreenFuels insists that there is no adequate pleading of a waiver because the GreenFuels Loan contains a provision stating that "[n]o delay or omission to exercise any right, power, or remedy [under the GreenFuels Loan] shall impair and such right, power or remedy . . . nor shall it be construed to be a waiver of any such breach or default."  But a no-waiver provision may itself be waived.  Christian Dior-N.Y., Inc. v. Koret, Inc., 792 F.2d 34, 39-40 (2d Cir. 1986).  And although the no-waiver provision may prevent GreenFuels from permanently forfeiting its rights, Aik Chuan has adequately pleaded that GreenFuels may not hold the Borrowers in default for failing to satisfy conditions that had been waived for months.  Generally, a lender must give borrowers advance notice and a reasonable time to comply with conditions where nonperformance has been excused by waiver.  See Williston on Contracts § 39:20 (4th ed. 2022).  Because no such

notice was given, Aik Chuan has adequately pleaded that the liquidity requirements were at least temporarily waived.

GreenFuels also argues that a default occurred when GE Borrower failed to meet the Verification Testing Criteria by the Target Verification Date.  Aik Chuan argues that this is because GreenFuels never satisfied its obligations under the GreenFuels Loan to test the module.  But GreenFuels explains that the module was not completed, and so there was nothing to test. GreenFuels's argument, however, relies on facts outside the pleading.  Whether the conditions at the diesel plant required GreenFuels to conduct verification tests, or whether it unreasonably refused to do so as Aik Chuan alleges, is a factual issue that must be addressed at a later stage of proceedings.

Regardless, Aik Chuan's claim for breach of the implied warranty of good faith and fair dealing is adequately alleged even if there was a default under the GreenFuels Loan.  Aik Chuan alleges that, to the extent there was a default, GreenFuels procured that default by depriving the Borrowers of liquidity and preventing them from satisfying the Verification Criteria.  As explained above, this conduct, combined with the foreclosure sale, adequately pleads a violation of the implied covenant of good faith and fair dealing.

B. Foreclosure Sale

GreenFuels moves to dismiss Aik Chuan's claim for breach of contract and the implied covenant of good faith and fair dealing arising from the foreclosure sale.  GreenFuels argues that Aik Chuan has not adequately pleaded that the foreclosure sale of the diesel plant was not commercially reasonable or violated any applicable law.  Additionally, GreenFuels claims that Aik Chuan has waived any objection to the foreclosure sale, pointing to provisions of the Subordination Agreement under which Aik Chuan waives the right to "direct the timing, order or manner of any sale."

Aik Chuan's claim does not require it to allege noncompliance with the law.  The implied covenant of good faith and fair dealing is breached when a party to a contract violates the other party's "reasonable expectations" or unreasonably attempts to frustrate the other party's ability to "receive the fruits of the contract."  JN Contemporary Art LLC, 29 F.4th at 128.  Aik Chuan alleges that GreenFuels failed to provide adequate notice to third parties about the foreclosure sale, thereby engineering a situation in which it would be the only bidder.  Aik Chuan could have reasonably expected that GreenFuels would attempt to maximize the value of the foreclosure sale, and GreenFuels's failure to do so caused

greater expenses for Aik Chuan under the contract.  Accordingly, Aik Chuan has adequately alleged a claim for breach.

Nor do the provisions of the Subordination Agreement to which GreenFuels points show that Aik Chuan has waived this claim.  Aik Chuan's claim does not seek damages for failure to provide it with any notice not required by the agreement.  And Aik Chuan's agreement to allow GreenFuels to determine the "timing, order or manner" of the foreclosure sale does not free GreenFuels of the obligation to conduct any such sale in good faith.

Finally, GreenFuels argues that Aik Chuan's claim arising out of the foreclosure sale alleges no damages.  GreenFuels acknowledges that additional proceeds from the foreclosure sale may have reduced Aik Chuan's obligations under the Subordination Agreement, but argues that this provides at most a defense to full payment under the Subordination Agreement, not damages for a breach of contract claim.  But Aik Chuan has alleged that the diesel plant was worth significantly more than the amount of debt outstanding under the GreenFuels Loan.  Accordingly, GreenFuels's alleged bad faith during the foreclosure sale not only increased the amount Aik Chuan would have to pay pursuant to the Subordination Agreement, but also deprived GE Hold of funds it could have used to make payments under the Promissory Notes.  Because Aik Chuan has alleged that GE Hold lacked those

funds, and has missed payments as a result, Aik Chuan has sufficiently alleged damages.

        C. Other Arguments

GreenFuels raises several other objections to Aik Chuan's breach of contract claims, but each is unavailing.  First, GreenFuels argues that Aik Chuan lacks standing to challenge an event of default under the GreenFuels Loan, as Aik Chuan is not a party to that agreement.  But the Subordination Agreement, to which Aik Chuan is a party, provides that Aik Chuan must take on the GreenFuels Loan, offset by any proceeds from the foreclosure, only when "an Event of Default occurs" under the GreenFuels Loan.  Aik Chuan therefore seeks to assert its own rights under the Subordination Agreement, not the Borrowers' rights under the GreenFuels Loan.  Additionally, Aik Chuan's claims for breach of the implied covenant of good faith and fair dealing allege a breach of a duty implied in the Subordination Agreement, and not any third-party contract.

GreenFuels claims that, in § 5.6 of the Subordination Agreement, Aik Chuan waived any defense to its obligation to take the GreenFuels Loan in exchange for paying any outstanding debt on the loan.  But, even assuming that GreenFuels's interpretation of this provision is correct, Aik Chuan argues that it has no obligation take on the GreenFuels Loan in the first instance, because the obligation only takes effect under

the Subordination Agreement "if an Event of Default occurs."
Additionally, to the extent that a default has occurred, Aik
Chuan argues that GreenFuels induced the default in violation of
the implied covenant of good faith and fair dealing, which the
parties cannot waive.  See Northwest, Inc. v. Ginsberg, 572 U.S.
273, 286 & n.2 (2014); Travellers Int'l, A.G. v. Trans World
Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994).

GreenFuels also argues that Aik Chuan has not alleged
damages, because even if GreenFuels has interfered with payments
under the Promissory Notes, those payments are not yet due.  But
Aik Chuan has alleged that, because GreenFuels has taken the
diesel plant, GE Hold has been deprived of the revenue it needed
to make payments under the Promissory Notes.  Accordingly, Aik
Chuan has adequately alleged that it incurred damages in the
form of missed payments on the Promissory Notes.

Finally, GreenFuels argues that Aik Chuan's claims for
breach of the implied covenant of good faith and fair dealing
must be dismissed because they are duplicative of its claims for
breach of contract.  Under New York law, a claim for breach of
the implied covenant of good faith and fair dealing must be
dismissed as duplicative of a breach of contract claim when "the
conduct and resulting injury alleged are identical."  Deutsche
Bank Nat'l Trust Co. v. Quicken Loans Inc., 810 F.3d 861, 869
(2d Cir. 2015) (citation omitted).  Aik Chuan, however, has

brought only a single claim for both breach of contract and breach of the implied covenant.  Additionally, Aik Chuan may plead a claim for breach of the implied covenant as an alternative to a breach of conflict claim, particularly "where, as here, there is a dispute over the meaning of the contract's express terms."  Spinelli, 903 F.3d at 206.  Accordingly, Aik Chuan's claim for breach of the implied covenant need not be dismissed as duplicative.

III. Tortious Interference with a Contract

The counterclaim defendants move to dismiss Aik Chuan's counterclaim that they tortiously interfered with the Promissory Notes by wrongfully depriving GE Hold of the funds it needed to make payments under the Promissory Notes.  Under New York law, tortious interference with a contract has five elements: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."  Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (citation omitted).

Aik Chuan has alleged a plausible claim for tortious interference with a contract.  Kolmar and GreenFuels do not dispute that the Promissory Notes constitute a "valid contract"

between Aik Chuan and GE Hold.  Additionally, they necessarily
knew of the Promissory Notes, as the point of the Subordination
Agreement is to subordinate those notes to the GreenFuels Loan.

Kolmar and GreenFuels dispute that Aik Chuan has adequately
alleged the third element of tortious interference, arguing that
they could not have "procured" GE Hold's breach of the
Promissory Notes by depriving it of the diesel plant when GE
Hold did not own the diesel plant.  But Aik Chuan has alleged
that GE Hold is a parent company of GE Rockwood, which owned the
diesel plant, and that GE Hold derived all of its revenue from
GE Rockwood.  Accordingly, even if GE Hold did not directly own
the diesel plant, the sale of the diesel plant deprived GE Hold
of the revenue it needed to make payments on the Promissory
Notes.  These allegations are sufficient to plausibly allege
that, "but for" the actions of the counterclaim defendants, GE
Hold would not have missed payments on the Promissory Notes.
See Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 828 (2d
Cir. 1990) (third element of a tortious interference claim
requires "but for" causation under New York law).

Kolmar and GreenFuels also argue that Aik Chuan has failed
to allege the fourth and fifth elements of a tortious
interference claim, because GE Hold had no obligation to make
payments under the Promissory Notes while it had outstanding
debt under the GreenFuels Loan.  They point out that, under the

Subordination Agreement, Aik Chuan agreed not to declare a default under the Promissory Notes until the GreenFuels Loan was satisfied.  And because the GreenFuels Loan has not been satisfied, they argue that failure to make payments under the Promissory Notes cannot constitute a breach of the Promissory Notes.

Aik Chuan has adequately alleged the fourth and fifth elements of its tortious interference claim.  Although the Subordination Agreement prevents Aik Chuan from declaring a default under the Promissory Notes, it does not require Aik Chuan to waive all rights under the Promissory Notes while the GreenFuels Loan is outstanding.  Cf. J-Bar Reinforcement, Inc. v. Crest Hill Capital LLC, 94 N.Y.S.3d 255, 255 (1st Dep't 2019) (finding no breach of a promissory note where a party waived, in the subordination agreement, the right to "demand or sue for payment" under the note).  Moreover, the Subordination Agreement expressly provides that GE Hold can make interest payments pursuant to the Promissory Notes without GreenFuels's consent. Accordingly, GE Hold was still required to make payments under the Promissory Notes, and its failure to do so was a breach of contract causing Aik Chuan's damages.

Kolmar and GreenFuels also assert that Aik Chuan has not stated a tortious interference claim because they acted in their own economic interest, not out of malice toward Aik Chuan.  In

response to a tortious interference claim, "a defendant may raise the economic interest defense -- that it acted to protect its own legal or financial stake in the breaching party's business." White Plains Coat & Apron Co. v. Cintas Corp., 8 N.Y.3d 422, 426 (2007).  This defense is not available, however, if "there is a showing of malice or illegality." Rich v. Fox News Network, LLC, 939 F.3d 112, 129 (2d Cir. 2019) (citation omitted).

The economic interest defense is not available to Kolmar and GreenFuels at this stage.  The availability of an affirmative defense at trial does not vitiate the pleading of a claim unless "the facts supporting the defense appear on the face of the complaint or evidence in its attachments." Sabir v. Williams, 37 F.4th 810, 823 (2d Cir. 2022) (citation omitted). Moreover, Aik Chuan has alleged that the counterclaim defendants acted, not to preserve their "stake in the breaching party's business", but to destroy the breaching party's business for their own gain.  Had Kolmar and GreenFuels been interested in preserving their economic interest, they would not have induced GE Borrower to default on the GreenFuels Loan.  The pleadings therefore plausibly allege malice.  Any dispute regarding motive must be resolved at trial.

IV.  Breach of Fiduciary Duty

Kolmar and GreenFuels have moved to dismiss Aik Chuan's counterclaim for breach of fiduciary duty, which it brings on behalf of GE Rockwood as a surety.  "To state a breach of fiduciary duty claim under New York law, a plaintiff must plead: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."  Spinelli, 903 F.3d at 207 (citation omitted).  "A debtor-creditor relationship is not by itself a fiduciary relationship although the addition of a relationship of confidence, trust, or superior knowledge or control may indicate that such a relationship exists."  In re Mid-Island Hops., Inc., 276 F.3d 123, 130 (2d Cir. 2002).  Additionally, no fiduciary relationship exists when the contract governing the parties' relationship disclaims any fiduciary duty.  Spinelli, 903 F.3d at 207.

Aik Chuan argues that the counterclaim defendants owed a fiduciary duty to the Borrowers because the extent of their control over the Borrowers went far beyond that of an ordinary debtor-creditor relationship.  The Borrowers' agreements with GreenFuels, however, state that their relationship is "solely that of creditor and debtor," and expressly disclaim the "rights of a beneficiary of a fiduciary relationship."  Accordingly, because the Borrowers have disclaimed any fiduciary

relationship, Aik Chuan may not bring a claim for breach of the fiduciary duty as a surety on their behalf.

V.   Motion to Strike

GreenFuels has moved to strike Aik Chuan's first through ninth affirmative defenses.  Under Rule 12(f), Fed. R. Civ. P., a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The standard applicable to a motion to strike an affirmative defense under Rule 12(f) is the same as the "plausibility" standard applicable to a motion to dismiss under Rule 12(b)(6). GEOMC Co., 918 F.3d at 98.

GreenFuels argues that Aik Chuan's first through ninth affirmative defenses should be dismissed, because Aik Chuan lacks standing to assert affirmative defenses to GreenFuels's contractual obligations under the GreenFuels Loan.  GreenFuels, however, does not discuss any individual affirmative defense to explain why it is legally insufficient.  And as explained above, Aik Chuan seeks to assert its own rights and defenses under the Subordination Agreement, not the Borrowers' rights under the GreenFuels Loan.  Moreover, to the extent that Aik Chuan seeks to assert any defenses the Borrowers had to their obligations under the GreenFuels Loan, it may do so as a surety of their debt.  See Chemical Bank v. Meltzer, 93 N.Y.2d 296, 302 (1999) (party is a surety when "bound to answer for the default of the

principal obligor"); Restatement (Third) of Suretyship and Guaranty § 34(1) (a surety may "raise as a defense . . . any defense of the principal obligor" except discharge during bankruptcy and lack of capacity).  The motion to strike is accordingly denied.

## Conclusion

Kolmar's May 13 motion to dismiss is granted, except with respect to Aik Chuan's claim for tortious interference with a contract.  GreenFuels's May 13 motion to dismiss and strike affirmative defenses is denied, except with respect to Aik Chuan's claim for breach of fiduciary duty.

Dated:   New York, New York
         September 30, 2022

_____
DENISE COTE
United States District Judge