Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, NY 10022



Troutman.com

---

**John N. Thomas**
D 212.704.6102
jack.thomas@troutman.com

July 11, 2023

Hon. Denise L. Cote
United States District Court for the Southern District of New York
500 Pearl Street, Room 1910
New York, NY 10007

**Re:** *American GreenFuels Rockwood (Tennessee), LLC v. Aik Chuan Construction PTE, Ltd.* **(Case No. 1:21-cv-07680-VSB)**

Dear Judge Cote:

    Aik Chuan's ("AC") quest to obtain American GreenFuels Rockwood's ("AGFR") and Kolmar's (together, "Kolmar") proprietary, highly confidential trade secrets continues. AC now seeks to "inspect, measure, survey, photograph, test, or sample the entire operations of the Green Diesel Plant, including but not limited to all equipment and fixtures affixed thereto or thereupon," and to "photograph[ ], videotape[ ], and/or otherwise document[ ]" such inspection. Ex. 1 to AC Letter. AC's request should be denied because AC has not established good cause for its belated request for discovery after the fact discovery deadline. AC's request also should be denied because burdens and dangers to Kolmar created by AC's proposed inspection greatly outweigh any benefit, which is none. Further, the status of the Green Diesel Plant *today* has zero relevance to its value when the foreclosure sale was held on July 9, 2021 – ***over two years ago***.

    AC contends that "the Rockwood Plant's fair market value is [ ] a core dispute between the parties," and admits that it raised that issue with Kolmar in August 2021 and April 2022. Indeed, AC's April 2022 letter asserted that the "ability to ascertain the valuation of these assets in as close of a period of time to Kolmar's foreclosure sale of the property as possible" was "critical" to its claims and defenses. Ex. 4 to AC Letter. Yet, AC sat on its hands and failed to serve its inspection notice until June 5, 2023, purporting to hold the inspection on July 6, 2023 (the same day that Kolmar's response was due). But pursuant to the Court's Scheduling Order, fact discovery closed on June 23, 2023, and that deadline "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *King v. Friend of Farmer, Inc.*, No., 2000 WL 290355, at *1 (S.D.N.Y. Mar. 21, 2000) (requiring moving party to show why it "reasonably" could not have complied with the original deadline in requesting the discovery); *Gao v. Savour Sichuan Inc.*, 2021 WL 4892864, at *1-2 (S.D.N.Y. Oct. 20, 2021) (party moving after close of fact discovery to show diligence to obtain discovery within court deadlines, foreseeability of need for additional discovery, whether request is opposed, whether it would prejudice non-moving party, and likelihood discovery will lead to relevant evidence). AC did not seek leave to extend fact discovery beyond June 23, 2023. AC cannot show that it diligently tried to obtain the inspection before the June 23 deadline, because it did not. Nor can AC show why it "reasonably" could not have complied with that deadline. AC entirely ignores this fatal flaw in its time-barred request. AC's request should be denied on that basis alone.

    Further, AC cannot show the burden and dangers that the inspection poses to Kolmar's highly confidential trade secrets are outweighed by the alleged benefit. Tennessee law is clear that evidence of fair market value must be "at the time of foreclosure." *Halliman v. Heritage Bank*, 2015 WL 1955448, at *6 (Tenn. Ct. App. Apr. 30, 2015). The value of property subsequent to the foreclosure sale is not relevant. *Lost Mountain Dev. Co. v. King*, 2006 WL 3740791, at *5 (Tenn. Ct. App. Dec. 19, 2006). AC recognized exactly that in its April 2022 letter (the "ability to ascertain the valuation of these assets ***in as close of a period of time to Kolmar's foreclosure sale of the property as possible***" is "critical" to its claims and



defenses). AC's argument that "[p]ost-foreclosure valuation evidence can often be probative of fair market value at some point in the past" is contrary to Tennessee law. The *Eastman Credit Union v. Bennett* case AC cites to support that incorrect proposition makes this clear. In *Eastman,* the court expressly discussed how valuations "formed months or even years before or after the time the Property was sold at foreclosure" were not relevant to the subject property's fair market value at the time of foreclosure. 2016 WL 1276275 at *8-9 (Tenn. Ct. App. Mar. 31, 2016). But "absent other potentially relevant proof, a price offered before or after the foreclosure sale may be relevant to establish fair market value" under "particular factual circumstances" where a "short period of time" has elapsed between the foreclosure sale and the resale, and "no significant changes to the property occurred between the two sales." *Id*.

Those "particular factual circumstances" do not exist here. There has been no subsequent sale of the property, and in the intervening two years, Kolmar scrapped the existing plant construction and re-built it from the ground up. As AC acknowledges, Kolmar produced pictures of the property pre- and post-foreclosure sale, including photographs showing that Kolmar dismantled Global Energy's verification module.[1] Nothing that exists at the property today following Kolmar's re-construction can possibly have any bearing on the value of the property as it existed on July 9, 2021. Apparently recognizing as much, AC suggests that the standard for granting an inspection request is so low that federal court cases denying inspection on relevance grounds "likely do not exist[.]" ECF 85 at 2 n.1. AC is wrong. *See, e.g.*, *Ehrlich v. Inc. Vill. Of Sea Cliff*, 2007 WL 1593211 at *5 (E.D.N.Y. May 31, 2007) (denying inspection request on relevance grounds and reiterating "[a]bsent a showing of relevance, courts have repeatedly denied requests to inspect properly pursuant to Fed. R. Civ. P. 34."); *Cameron v. Menard*, 2021 WL 2805603 at *10 (D. Vt. July 6, 2021) (denying site inspection on relevance grounds, particularly where other visual representations of the relevant area may be used in depositions).

Undeterred by its last Letter Motion, AC doubles down on its misleading attempt to back-door its way into relevance by referencing Kolmar's October 2022 draft investor presentation. That presentation notes a "preview" Net Present Value (NPV) of $980 million for a fully built-out plant capable of producing **27 million gallons** per year. *See* ECF 81-3 at 3, 4. The Project as currently (re)constructed can only produce **1.5 million** gallons per year. *Id*. at 4. Regardless, the Project only has such value if it produces commercially salable quantities of renewable diesel, which it currently does not – and never did while AC or GE owned it, either. Kolmar's NPV projection for a plant that does not even exist cannot make Kolmar's post-foreclosure proprietary engineering and design work relevant to any issue in this case.

Any benefit of AC's proposed inspection is greatly outweighed by the significant harm it poses to Kolmar. AC fails to acknowledge the trade secret concerns Kolmar raised in opposition to AC's previous letter motion. ECF 80-1 at 2-3; ECF 81 at 1-2. AC does not dispute that the wood pyrolysis technology is novel and unproven, and that no one (even Kolmar, to date) has successfully brought it to commercialization. The availability of "experts" in this field is necessarily limited. Though Kolmar raised this issue in the parties' meet and confer, AC has not disclosed the identity of its retained expert (consulting and/or testifying). Kolmar thus cannot know if AC's expert works for or has experience with any competitor of Kolmar's in this field. That includes Proton Power, Inc., which continues to try to develop and commercialize other projects using wood pyrolysis technology. Kolmar would be irreparably harmed if such an "expert" were permitted to inspect, photograph, and/or videotape Kolmar's proprietary engineering and design work. Even if those materials were designated "Highly Confidential," any such expert would have the benefit of seeing and learning Kolmar's proprietary information and that is a bell that cannot be un-rung. *See, e.g.*, *BASF Corp. v. U.S.*, 321 F. Supp. 2d 1373, 1380-81 (Ct. Int'l. Trade 2004) (denying request to show confidential information to expert with relationship to a direct competitor because expert would study sensitive material that would become part of expert's general knowledge;); *Grand River Enterprises Six Nations, Ltd. v. King*, 2009 WL 330213, at *6 (S.D.N.Y. Feb. 9, 2009) (withholding data from expert based on likelihood of plaintiff's expert working for disclosing parties' competitors and high cost of assembling the data, which outweighed the relevance to plaintiff's claims).

---

[1] Kolmar did not produce any photographs of the reconstructed module.

**Hon. Denise L. Cote**
July 11, 2023, Page 3



By <u>*/s/ John N. Thomas*</u>
    John N. Thomas


cc: Counsel of Record via ECF