**Arnold & Porter**

**John F. Hagan, Jr.**
Partner
+1 312.583.2370
John.Hagan@arnoldporter.com

November 10, 2023

**VIA ECF**
Honorable J. Denise L. Cote, U.S.D.J.
United States District Court for the Southern District of New York
500 Pearl Street, Room 1910
New York, New York 10007

Re: ***American GreenFuels Rockwood (Tennessee), LLC v. Aik Chuan Construction Pte. Ltd.***, **No. 21-CV-7680 (DLC)**

Dear Judge Cote,

We represent Aik Chuan Construction Pte Ltd. ("Aik Chuan") in the above-captioned matter. We write following the final pretrial conference and your Honor's request that the parties confer regarding the admissibility of their respective direct testimony witness affidavits, including the exhibits cited therein. The parties have met and conferred regarding Aik Chuan's objections to Counterclaim Defendants American GreenFuels Rockwood (Tennessee), LLC and Kolmar Americas, Inc.'s (collectively, "Kolmar") witness affidavits and cited exhibits. Kolmar's witness affidavits largely contain inadmissible hearsay, however, Aik Chuan has limited its objections to the most relevant, egregious cases. Aik Chuan's remaining objections are attached hereto as "**Appendix A**." We look forward to arguing these objections on Monday, November 13, 2023.

Moreover, Aik Chuan respectfully requests that the Court require Kolmar to clarify on the record the exhibits cited within each of Kolmar's witness affidavit, to the extent clarification is necessary. During the meet and confer process, Aik Chuan raised many objections to the witness affidavits based on Kolmar's reliance on or citation to exhibits that did not support the purported testimony therein. In response, Kolmar provided some corrected exhibits over the course of this week, and only today (for the first time) provided Aik Chuan with a full set of trial stamped exhibits, inclusive of corrected stamped exhibits. Aik Chuan has thus withdrawn many of its exhibit objections. Nonetheless, the witness affidavits do not reflect the corrected exhibits (or corrected trial exhibit numbers), which has caused considerable confusion as to the actual exhibits cited within the witness affidavits and resultant delay in resolving Aik Chuan's objections.

We thank the Court for its attention to this matter.

Respectfully submitted,

/s/ *John F. Hagan, Jr.*
John F. Hagan, Jr.

cc: Counsel of Record (*via ECF*)
(*with enclosure*)

# Arnold & Porter

John F. Hagan, Jr.
Partner
+1 312.583.2370
John.Hagan@arnoldporter.com

# Appendix A

### Aik Chuan's Witness Statement (and Exhibit) Objections
### Kolmar Witness: Kevin Luddy

| Para. | Quote | Aik Chuan Objection | Kolmar Response | Aik Chuan Rebuttal |
|---|---|---|---|---|
| 111 | SilverPeak refused to move forward unless Global paid hefty due diligence fees, which SilverPeak advised could be over $100,000 with additional costs for legal fees, starting with a $75,000 deposit when the term sheet was signed. Global could not pay the due diligence fees because it had no money to pay them. I tried to negotiate terms where SilverPeak's due diligence expenses would be reimbursed only if the loan was finalized, but SilverPeak rejected that approach. Pl.'s Ex. 507 at AGFK_094181. My concern was that even if the due diligence fees were paid, SilverPeak would reach the same conclusion that ECP and other potential lenders had during their due diligence efforts, which was that unless Module 2 was fully operational and proven capable of producing salable quantities of renewable diesel, the deal would be too risky to invest in. On May 4, 2021, SilverPeak advised that it had spoken with some third party diligence providers and believed that "what is needed here is more of a private equity partner and not a debt partner." Pl.'s Ex. 513 at AGFK_094343. Silverpeak then withdrew from | Hearsay; exhibits do not relate to testimony | Not hearsay. Statements are not being offered for the truth, rather to show the effect on the listener (Kolmar/ AGFR and Global). FRE 801(c).<br><br>Cite to AGFK_094181 is correct. File served as Ex. 507 is incorrect and will be replaced.<br><br>Cite to bates numbers AGFK_094343 is correct. File served as Ex. 513 is incorrect and will be replaced. | Objection withdrawn based on receipt of corrected exhibits and Kolmar's stipulation that this is not offered for the truth of the matter asserted. |

# Arnold & Porter

| Para. | Quote | Aik Chuan Objection | Kolmar Response | Aik Chuan Rebuttal |
|---|---|---|---|---|
| | further discussions regarding the bridge loan/take out financing. | | | |
| 118 | Global's financial situation prevented it from hiring employees after USP&E stopped work at the Site. On May 28, 2021, Mr. Smith explained that he "cannot ethically and I believe legally commit the company to hiring employees and have them work knowing there is a possibility they will not be paid." Pl.'s Ex. 538 at GLOBAL00013615. Global's financial status also meant that it could not obtain materials necessary for day-to-day operations. Mr. Smith advised us that: [t]he other issues facing the company now are the lack of spare parts, consumables, PPE [personal protection equipment] and within the next couple of weeks, feedstock. We have not had the money to restock critical components, consumables and PPE and we are getting to the point that if we do not have these available soon we will be operating the system in an unsafe manner and will be forced to shut down.<br><br>* * *<br><br>I cannot stress enough how critical it is for us to have an operating facility if we are going to preserve value, attract a potential buyer (last resort), get to balance of plant funding, etc.. | Hearsay; 538[1] does not relate to testimony | Pl.'s Ex. 533 is not cited.<br><br>The statements in Pl.'s Ex. 538 are admissible under FRE 803(6) as a record of a regularly conducted activity. Mr. Smith was regularly communicating with Kolmar/AGFR and reporting activity at the plant as a part of Global's regular business activity.<br><br>Mr. Smith's/Global's statements are admissible under FRE 801(d)(2).<br><br>Mr. Smith's statements are admissible under FRE 803(3) showing Mr. Smith's then existing state of mind and/or plan related to the site.<br><br>Mr. Smith's statements are also admissible under FRE 807.<br><br>Alternatively, the statements are not being offered for the truth, rather to show the effect on the listener (Kolmar/AGFR). FRE 801(c).<br><br>Citation to GLOBAL00013615 is correct. Intended to cite to Pl.'s Ex. 592. | Both Kolmar's originally produced Pl. Ex. 538, and the corrected Pl. Ex. 538 received from Kolmar on Nov. 10, 2023, does not contain the quotation attributed to Mr. Smith cited in Paragraph 118.<br><br>Paragraph 118 and the exhibit cited therein, Pl. Ex. 592, constitute hearsay within hearsay. The email must qualify as a business record exception. *New World Trading Co. Ltd. V. 2 Feet Prods., Inc.*, No. 11-cv-6219(SAS), 2014 WL 988475, at *1 (S.D.N.Y. Mar. 13, 2014). And "[a]n e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule." *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 & n.163 (S.D.N.Y. 2008) (citing FED. R. EVID. 803(6)). Kolmar has not provided a rationale for why this correspondence constitutes a business record other than it is an email. Moreover, even if the email constitutes a business record under FRE 803(6), the out-of-court statements attributed to Mr. Smith must fall within a hearsay exception. |

---

[1] During the meet and confer process, Aik Chuan inadvertently referenced Exhibit 533.

# Arnold & Porter

| Para. | Quote | Aik Chuan Objection | Kolmar Response | Aik Chuan Rebuttal |
|---|---|---|---|---|
| | I have been at Rockwood when PPI had it shut down and if we let that happen it will be very challenging to rebound.<br><br>*Id.* | | | Statements made by Mr. Smith/Global are not party-opponent admissions under FRE 801(d)(2). Mr. Smith/Global are not parties to the litigation nor is Mr. Smith an agent or employee of Aik Chuan.<br><br>FRE 807 is unavailable where the declarant's testimony, Mr. Smith, is reasonably available. *United States v. Dawkins*, 999 F.3d 767, 791 (2d Cir. 2021). Mr. Smith submitted a declaration and will appear at trial.<br><br>Moreover, FRE 803(3) applies to the "*declarant*'s then-existing state of mind," *i.e.*, Greg Smith, not a third-party's state of mind, *i.e.*, Kolmar, and does not apply to enter a "statement of memory or belief to prove the fact remembered or believed[.]" Further, FRE 803(3) "only applies to statements that 'face forward' rather than backward.'" *United States v. Elmaani*, No. 20-CR-661(CM), 2023 WL 2770742, at *6 (S.D.N.Y. Apr. 4, 2023) (citation omitted). FRE 803(3) does not allow "one's state of mind, proved by a hearsay statement, to provide an inference of the happening of an event that produced the state of mind." *United States v. Dawkins*, 999 F.3d 767, 790 (2d Cir. 2021) (citation omitted). |

# Arnold & Porter

| Para. | Quote | Aik Chuan Objection | Kolmar Response | Aik Chuan Rebuttal |
|---|---|---|---|---|
| 145 | As Global's operations neared a halt in mid-May 2021, Resilient Energi visited the Site, expressing interest in a $5 million equity investment in Global. Global offered Resilient a 5% interest in Global Energy, LLC in exchange for a $5 million equity investment. Mr. Smith explained that Global Energy, LLC "houses the IP of GE, the (6) additional PPI facility contracts and the Master development Agreement with Aik Chuan for (9) additional PPI facility contracts." AGFK_094467. I participated in discussions with Resilient and learned that it did not actually have $5 million available to make the proposed investment or any investors of its own. Rather, Resilient proposed that it would go search for investors to cobble together the proposed $5 million investment, and Resilient wanted a fee or equity sharing in order to provide it. This was a non-starter. Global needed immediate funding. Global did not have time to wait while Resilient tried to place investments for a fee. | Quotes from an exhibit but does not cite it by number; Hearsay regarding Resilient discussions; Hearsay, foundation, speculation regarding ability to fund | Intended to cite to Pl.'s Ex. 606 at AGFK_094467.<br><br>Mr. Smith's/Global's statements are admissible under FRE 801(d)(2). Statements regarding Resilient discussions are not hearsay. Statement regarding Resilient proposal is not being offered for the truth but to show the effect on the listener (Kolmar/AGFR). FRE 801(C).<br><br>Foundation clearly established through Mr. Luddy's testimony that he participated in discussions with Resilient and is testifying about what learned from those discussions. Statements not being offered for the truth but rather to show effect on the listener. FRE 801(c). | Paragraph 145 contains hearsay because it is not offered "merely to show the effect of [Resilient's or Global's] alleged statements on [Luddy's or Kolmar's] mind." *Great Lakes Reinsurance (UK) SE v. Herzig*, No. 16 CIV. 9848 (PGG), 2023 WL 4266012, at *8 (S.D.N.Y. June 29, 2023). Rather, it is being offered for the truth of what the declaration says, *i.e.*, what Resilient or Global said. *Id.*<br><br>Moreover, statements made by Mr. Smith/Global are not party-opponent admissions under FRE 801(d)(2). Mr. Smith/Global are not parties to the litigation nor is Mr. Smith an agent or employee of Aik Chuan. |
| 149 | On July 19, 2021, we advised Aik Chuan that the foreclosure sale was held, the property subject to the foreclosure sale was sold for $1.7 million (*i.e.*, the sole bid that Kolmar made at the foreclosure sale), and that Aik Chuan owed a balance of $17,485,067 plus interest that continued to accrue on a daily basis that would increase the | No foundation regarding how $27.9 million alleged Outstanding Indebtedness figure was calculated, move to | Mr. Luddy is a 30(b)(6) witness and designated to testify regarding the Loan Agreement and Financing Documents. The balance owed is derived directly from the provisions in the contract and the contract provisions speak for themselves. No additional foundation is necessary. | Kolmar's damages calculation lacks foundation and Kolmar does not explain how it calculated the $27.9 million figure. At his deposition, Mr. Luddy could not provide a definitive calculation for damages. Instead, Mr. Luddy testified that Kolmar could calculate it, and "last time" Kolmar "did the calculation," |

**Arnold & Porter**

| Para. | Quote | Aik Chuan Objection | Kolmar Response | Aik Chuan Rebuttal |
|---|---|---|---|---|
| | outstanding indebtedness owed. Pl.'s Ex. 124 at AIKCHUAN00058682. As of today, Aik Chuan owes $27,929,634. | strike; 124 cited states outstanding indebtedness is $17. million and similarly lacks any foundation as to how that was calculated (nor does Mr. Luddy's affidavit provide any foundational testimony). No credible evidence of amounts allegedly owed. | | it was around "24 million, 25 million," but also that it is "probably a little less" and "more like 22 million." There is no evidence for the $27.9 million number. Moreover, at the pretrial conference, Kolmar's counsel confirmed to the Court that it is not seeking attorneys' fees, which should not be part of any calculation. |